**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RALPH McCLAIN,** *et al.* | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 2:23-cv-4012-JDW** |
| | : | |
| **BLANCHE CARNEY,** *et al.* | : | |
| **Defendants.** | : | |

**<u>MEMORANDUM</u>**

Ralph McClain is incarcerated at the Curran-Fromhold Correctional Facility ("CFCF") in Philadelphia, and he contends that various individuals violated his constitutional rights and federal statutes during his time in a solitary housing unit. He seeks leave to proceed *in forma pauperis*, and I will permit him to do so. While I will dismiss most of Mr. McClain's claims after conducting the necessary statutory screening, he may proceed with his deliberate indifference claim against two defendants who he alleges encouraged other inmates to harm him.

## I.    RELEVANT BACKGROUND

### A.    Procedural History

Mr. McClain filed this suit on October 16, 2023, purporting to represent himself and 64 other plaintiffs, all as representatives of a putative class. Because Mr. McClain is not an attorney, he cannot represent those other individuals, and I dismissed any claims on behalf of anyone other than Mr. McClain in this lawsuit. Mr. McClain also asserted a host of unrelated claims based on a variety of grievances against 68 different defendants.

Because "[u]nrelated claims against different defendants belong in different suits," *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007), I severed Mr. McClains distinct claims into separate lawsuits.

As a result of my severance orders, the claims left in this case stem from Mr. McClain's allegations related to the conditions of his confinement in solitary confinement in unit A-1-3 at CFCF starting as of August 7, 2023. In addition, 52 defendants remain in this matter:[1] (1) the City of Philadelphia, (2) Angelucci, (3) Xavier Beaufort, (4) Gray, (5) Harris, (6) Rose, (7) Harmon, (8) Lateefah Robinson, (9) Simmons, (10) Orges Prifti, (11) William Hilty, (12) Alesia Alderman, (13) Dwayne Corley, (14) Kirkwood Hansfield, (15) Mark Randell, (16) Hughes, (17) Tun, (18) Baldwin, (19) Walter Hawkins, (20) Anthony Carter, (21) Earley, (22) Williams, (23) T. King, (24) McDanials, (25) Antoni, (26) Yes Care, (27) Corizon, (28) Dr. C.J., (29) Nichelle Jones, (30) Jumi Park, (31) Dr. Elizabeth Bradley, (32) Bruce Herdman, (33) Regional Medical Director, (34) Regional Behavioral Health Director, (35) Dr. Neha Pancholy, (36) Hurt, (37) Abella, (38) Abby, (39) Brittany, (40) Carol, (41) Jackie, (42) Gregory Vrato, (43) James Kenney, (44) Christy Brady, (45) Judge Karen Simmons, (46) Williams, (47) Hillary, (48) Shannon Scott, (49) Gills, (50) Tamara Brittingham, (51) Cheryl Bettigole, and (52) Judge Monica Gibbs (collectively the "Defendants"). Mr. McClain has sued each of these individual Defendants in both their

---

[1]    I have listed the Defendants as identified in Mr. McClain's Complaint. For some Defendants, he listed a first name or last name only.

individual and official capacities. In his Complaint, he purports to assert claims against them pursuant to 42 U.S.C. § 1983, § 1985, and § 1986, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA").

### B.   Factual Allegations[2]

Mr. McClain has been incarcerated at CFCF since May 10, 2023, following his transfer from the Pennsylvania Department of Corrections. It is unclear whether he is being held at CFCF as a pretrial detainee or "under [a] county probation sentence." (ECF No. 1 at 5.) He alleges that on May 11, 2023, he met with Jumi Park, identified as the "intake psych nurse," who informed him that he "would not be provided to continue to receive his Latuda or Doxepin psych medications that were sent with him from the Pa DOC." (*Id.* at 16.)

On August 7, 2023, Alesia Alderman moved Mr. McClain to solitary confinement in unit A-1-3, where he remained housed more than forty days through the filing of this lawsuit. Mr. McClain contends that he did not receive a misconduct charge or written notice before being placed in solitary confinement despite unit officers telling him that he "is on 'punitive' status." (*Id.* at 21.) Instead, the decision to move him stemmed from him "sending legal mail for filings in this court given to [another inmate] to mail out for him." (*Id.* at 20.) However, he also claims that Defendant Harris told him that he was

---

[2]      I take these allegations from the relevant parts of the Complaint and public dockets of which I may take judicial notice.

moved to the solitary unit "due to 2022 court orders" that Judge Simmons issued. (*Id.* at 21.)

According to Mr. McClain, inmates on A-1-3 are "being punished with only 2-3 hours of out-of-cell time, or less, a week" and claims that he has "only been allowed out of cell for 8 hours, max" since being moved to the unit. (*Id.* at 21, 22.)  In addition, "Defendants" have been "holding all of [his] outgoing and incoming mail" and have not provided notice of any specific pieces of mail that they have confiscated. (*Id.* at 25.)

Mr. McClain alleges that he "has written letters, sick calls and grievances, and spoken to mental health and medical staff," including Defendants Park, Jones, Dr. C.J., Hurt, Abella, Abby, Brittany, Carol, Dr. Pancholy, Dr. Bradley, and Jackie, "regarding his need for mental health psychotherapy and return to psych meds that were working, regarding his diagnosed urological treatment specialty care needs, and his suicidality issues." (*Id.* at 22.) He claims he received either inadequate care or no care to address these needs. For example, he alleges that he has been on a wait list to see a urology provider since June 17, 2023, but he has not yet seen a provider despite "continuing to suffer great pains and discomfort from diagnosed prostate and testicular maladies." (*Id.* at 23.)

With respect to mental health issues, McClain avers that he:

Repeatedly put in sick calls and told A-1-3 officers and nurses that he feels suicidal and has been saving all his psych pills since 8/20/23 to overdose and try to kill himself for over the last 2 weeks, yet the pills keep being given to him to not take and pile up to kill himself and nothing has been done to

> prevent [him] from doing so and nobody from mental health has attempted
> to provide [him] any suicidality psychotherapy treatment.

(*Id.*)

On August 16, 2023, Defendant Hillary told Mr. McClain that, per Mr. McClain's attorney, Judge Gibbs ordered Mr. McClain "to be at the state hospital," but Defendant Hillary refused to let Mr. McClain speak to his attorney himself. (*Id.* at 21.) Defendant Hillary also refused to provide him with docket reports for his criminal cases.

In addition, prison officers "have offered multiple other prisoners $100.00 bags of commissary to 'stab' [him] due to [his] grievances and lawsuits" against prison officials and staff at CFCF. (*Id.* at 25.) Other inmates told him that Anthony Carter and Walter Hawkins were among the officers who "put the $100 bag of commissary hit contract 'on [his] head.'" (*Id.*)

Mr. McClain claims to have suffered numerous injuries because of this conduct, including "suicidal illness, malfunctioning heart, genitophysiological pain and dysfunctioning, fluctuating large weight gains and losses due to depressive symptoms, brain and head damage, and disfiguration." (*Id.* at 12.) He states that "[a]ll named defendants are sued for actions or non-actions of direct involvement with these . . . facts, municipal liability policy and/or custom, knowledge and acquiescence and/or failure to act, or corporate liability policy and/or custom." (*Id.* at 25.) He seeks millions of dollars in damages, unspecified declaratory relief, and wide-ranging injunctive relief pertaining to the conditions at CFCF.

II.    *IN FORMA PAUPERIS*

When a prisoner who has, on three or more prior occasions while incarcerated, filed an action or appeal in federal court that a court dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, then a court must deny *in forma pauperis* status unless the prisoner was in imminent danger of serious physical injury at the time that the complaint was filed. *See* 28 U.S.C. § 1915(g). "[A] strike under § 1915(g) will accrue only if the entire action or appeal is (1) dismissed explicitly because it is 'frivolous,' 'malicious,' or 'fails to state a claim' or (2) dismissed pursuant to a statutory provision or rule that is limited solely to dismissals for such reasons, including (but not necessarily limited to) 28 U.S.C. §§ 1915A(b)(1), 1915(e)(2)(B)(i), 1915(e)(2)(B)(ii), or Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Byrd v. Shannon*, 715 F.3d 117, 126 (3d Cir. 2013).

Mr. McClain accumulated at least three "strikes" for purposes of Section 1915(g) at the time he filed this action. *See McClain v. Storm*, Civ. A. No. 13-677 (J E.D. Va.) (order dated July 8, 2013, dismissing case as frivolous; *McClain v. Cash*, Civ. A. No. 10-2529 (M.D. Pa.) (order dated Mar. 23, 2011, dismissing case for failure to state a claim); *McClain v. Corbett*, Civ. A. No. 10-1517 (M.D. Pa.) (order dated Mar. 15, 2011, dismissing case for failure to state a claim); *see also McClain v. Timberman*, Civ. A. No. 17-5839 (E.D. Pa.) (ECF No. 3 (treating Mr. McClain as a three-striker)).

Because McClain is a "three-striker," his Complaint must adequately allege that he is in imminent danger of serious physical injury for him to obtain *in forma pauperis* status. "Imminent dangers are those dangers which are about to occur at any moment or are impending." *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (3d Cir. 2001) (internal quotation marks omitted). Past dangers are not imminent dangers. *See Ball v. Famiglio*, 726 F. 3d 448, 467 (3d Cir. 2013), *partial abrogation on other grounds recognized by Talley v. Wetzel*, 15 F.4th 275, 282 (3d Cir. 2021). Practices that "may prove detrimental . . . over time" also "do not represent imminent dangers," as the harm is not "about to occur at any moment." *Id.* at 468 (quote omitted). Courts must consider a *pro se* prisoner's allegations of imminent danger "under our liberal pleading rules, construing all allegations in favor of the complainant." *Gibbs v. Cross*, 160 F.3d 962, 966 (3d Cir. 1998), *overruled on other grounds*, *Abdul-Akbar*, 239 F.3d 307. However, vague, general, or conclusory allegations are insufficient to establish that a plaintiff is in imminent danger. *See Ball*, 726 F.3d at 468.

Mr. McClain alleges that he is in imminent danger "due to his history of suicide attempts and severe self-injury, untreated serious mental illness, untreated serious medical conditions, and threats" by officers who have put a "hit" on him. (ECF No. 1 at 25.) The Complaint includes more specific allegations to bolster these assertions. Taking Mr. McClain's allegations together, he asserts that he suffers from psychological conditions, that he is in pain while awaiting treatment for urological issues for which he has been approved to see a urology provider, and that he has a history of suicidal ideation and

currently feels suicidal. Yet he is being held in solitary confinement while actively hoarding "psych pills" that he alleges he intends to use to kill himself. Taken together, these allegations satisfy the "imminent danger" exception. *See, e.g.*, *Wallace v. Baldwin*, 895 F.3d 481, 485 (7th Cir. 2018) (holding that prisoner satisfied imminent danger exception where he "spent eleven years in solitary confinement, suffers from serious mental illness, and has a history of attempting to harm himself" and "raise[d] a genuine concern that the negative psychological effects of his segregation will drive him to self-harm").

Furthermore, Mr. McClain's allegation that correctional officers have offered $100 in commissary to other inmates to stab him suggests a basis for imminent danger of serious physical injury at the time of filing. *See, e.g.*, *Sussman v. Sec'y, Fla. Dep't of Corr.*, No. 20-cv-14152, 2022 WL 53608, at *2 (11th Cir. Jan. 6, 2022) (*per curiam*). Accordingly, I will grant Mr. McClain leave to proceed *in forma pauperis* in this case. However, because he is a prisoner, he must still pay the $350 filing fee in installments, as mandated by the Prison Litigation Reform Act.

## III.     PLAUSIBILITY OF CLAIMS

Because Mr. McClain is proceeding *in forma pauperis*, Section 1915(e)(2)(B)(ii) requires me to dismiss the Complaint if it fails to state a claim. The same standard that applies to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) also applies for this analysis. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). That means that I must "determine whether the complaint contains "sufficient factual matter, accepted

as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation, [I] accept the facts alleged in [the] complaint as true, draw[] all reasonable inferences in [the plaintiff's] favor, and ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quotes omitted). Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678. Mr. McClain is proceeding *pro se*, so I construe his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citation omitted).

Mr. McClain's Complaint is best described as a "kitchen sink" or "shotgun" complaint because it seeks to bring "every conceivable claim against every conceivable defendant." *See Talley v. Harper*, No. 14-cv-1411, 2017 WL 413069, at *2 (W.D. Pa. Jan. 31, 2017).  Courts have "repeatedly criticized" this type of pleading as "troublesome for many reasons." *Id.* Primarily, it is not the Court's job to "identify[] the plaintiff's genuine claims and determining which of those claims might have legal support." *Id.* Here, there is an additional concern that "[t]he imminent danger exception creates a narrow opening for a particular type of claim; it does not give prisoners . . . a license to swamp the court with claims whenever they successfully state a claim of imminent danger." *Brown v. Lyons*, 977 F. Supp.2d 475, 481-82 (E.D. Pa. 2013).

Mr. McClain asserts specific claims regarding the conditions in the A-1-3 solitary unit at CFCF including: (1) claims for unconstitutional punishment and retaliation based

on his placement on the unit; (2) claims based on lack of "out-of-cell" time; (3) claims arising from placement in solitary confinement; (4) claims related to access to "legal services," his attorney, and copies of dockets for his criminal cases; (5) claims for deliberate indifference to his suicidal tendencies; and (6) claims related to an alleged hit put on him. He also asserts more general claims that are not necessarily tied to his time in the solitary housing unit, including (1) claims based on the alleged failure to treat his serious medical needs related to urological conditions; (2) claims based on the alleged failure to treat his mental health needs; and (3) claims related to the alleged interference with his mail.

Other district courts "have frowned on prisoners' attempts to lump together their multifarious grievances about life in a single prison[.]" *McKinney v. Prosecutor's Off.*, No. 13-cv-2553, 2014 WL 2574414, at *15 (D.N.J. June 4, 2014). Yet this is exactly what Mr. McClain has done here. Because he has pled his claims in a vague and generalized manner, it is difficult to discern whether his allegations specific to unit A-1-3, those for deliberate indifference to his medical and mental health needs, and those related to processing his mail — are properly joined together. This is in part because many of the claims do not pertain to any particular Defendant or Defendants, and it is unclear how, if at all, some of the substantive claims relate to each other. Considering Mr. McClain's *pro se* status, and for purposes of judicial economy upon screening, I will address these claims together at this time because they all appear to concern the current conditions in which Mr. McClain is confined.

### A.    Section 1985 And 1986 Claims

"[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (citation omitted). "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[T]o maintain a cause of action under § 1986, the plaintiffs must show the existence of a § 1985 conspiracy." *Clark v. Clabaugh*, 20 F.3d 1290, 1295 n.5 (3d Cir. 1994).

The Complaint does not allege concerted action. In other words, Mr. McClain has not adequately alleged any factual basis on which one could infer a conspiracy. In addition, nothing in the Complaint suggests any factual basis for race- or class-based discrimination. To the extent McClain invokes these statutes, his claims are not plausible. Accordingly, I will dismiss his Section 1985 and 1986 claims. If Mr. McClain has a good faith basis to assert facts that would make these claims plausible and to show that the conspiracy poses an immediate threat to him, then he may amend his Complaint to assert them.

### B.     ADA And RA Claims

Both the ADA and RA "require public entities, including state prisons, to provide, in all of their programs, services, and activities, a reasonable accommodation to individuals with disabilities." *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019). "[W]hen a plaintiff sues under both the RA and the ADA, [courts] often address both claims in the same breath, construing the provisions of both statutes in light of their close similarity of language and purpose," since "the scope of protection afforded under both statutes, i.e., the general prohibition against discrimination, is materially the same." *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018) (cleaned up). "To state a claim under either the ADA or the RA, [a plaintiff] must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess*, 933 F.3d at 288-89 (citation omitted). The plaintiff "must also show intentional discrimination under a deliberate indifference standard [if] he seeks compensatory damages." *Id.* at 289 (same). A "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual . . . ." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* at § 12102(2)(A).

Nothing in the Complaint suggests that the City of Philadelphia[3] discriminated against Mr. McClain based on a disability or denied him accommodations for a disability with respect to any programs, services, or activities at CFCF. Although Mr. McClain alludes to certain mental health conditions, he has not alleged any facts regarding the specific nature of any alleged disability or how those conditions limit a major life activity. Additionally, to the extent Mr. McClain rests his ADA and RA claims on any alleged denial or inadequacy of medical treatment, "decisions about a prisoner's medical treatment generally do not give rise to a claim under the ADA." *Nunez v. Prime Care Health, Inc.*, No. 19-cv-859, 2019 WL 1400466, at *1 n.3 (E.D. Pa. Mar. 27, 2019) (collecting cases). Indeed, such claims would fail because the ADA and RA "prohibit[] disability-based discrimination, 'not inadequate treatment for the disability.'" *Kokinda v. Pennsylvania Dep't of Corr.*, 663 F. App'x 156, 159 (3d Cir. 2016) (quotation omitted). As a result, I will dismiss Mr. McClain's ADA and RA claims. Mr. McClain may amend his Complaint to assert additional facts, if he has a good faith basis to do so and the claim would be one for which he faces an immediate risk of harm.

## C.    Section 1983 Claims

The bulk of the Complaint concerns alleged constitutional violations arising from Mr. McClain's conditions of confinement. "To state a claim under § 1983, a plaintiff must

---

[3]    Neither Title II of the ADA nor the RA provides for individual liability. *See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) Therefore, I construe the Complaint as asserting these claims against the City of Philadelphia only.

allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Most of Mr. McClain's claims are undeveloped or inadequately pled and will be dismissed for the reasons discussed below. However, he may proceed with his deliberate indifference claim based on the "hit" allegedly placed against him by two of the Defendants.

### 1.   Municipal liability claims against the City of Philadelphia, YesCare, and Corizon[4]

To plead a Section 1983 claim against a municipality, such as the City of Philadelphia, or a medical contractor that provides medical services at a county prison, such as Corizon or YesCare, a plaintiff must allege that the municipality or contractor's policy or custom caused the violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (applying *Monell* to claims against medical contractor). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal

---

[4]    To the extent Mr. McClain sued the individual Defendants in their official capacities, suing an officer or employee in his official capacity is essentially a means of pleading claims against an entity of which the officer or employee is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Accordingly, I will dismiss these official capacity claims as duplicative of Mr. McClain's claims against their employers.

policy with respect to the action issues an official proclamation, policy, or edict." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quotation omitted). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (same).

"A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id.* This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.* (quotation omitted). For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiffs'] injury." *Id.* (same). In other words, "[c]ustom requires proof of knowledge and acquiescence by the decisionmaker." *McTernan*, 564 F.3d at 658 (citation omitted).

A plaintiff may also state a basis for municipal liability by alleging failure-to-supervise, train, or discipline and alleging facts that "show that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* "Ordinarily,

this requires a plaintiff to identify a pattern of similar constitutional violations by untrained employees that puts municipal decisionmakers on notice that a new program is necessary." *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (quotation omitted).

"Otherwise, the plaintiff needs to show that failure to provide the identified training would likely result in the violation of constitutional rights — *i.e.*, to show that the need for more or different training was so obvious." *Id.* (cleaned up). "Additionally, the identified deficiency in a [municipality's] training program must be closely related to the ultimate injury; or in other words, the deficiency in training must have actually caused the constitutional violation." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (same). "[T]he causation inquiry focuses on whether the injury could have been avoided had the employee been trained under a program that was not deficient in the identified respect." *Id.* at 226 (quotation omitted).

Mr. McCain bases his *Monell* claims against the City, YesCare, and Corizon on an unidentified municipal or corporate "policy and/or custom" as well as "knowledge and acquiescence and/or failure to act." (ECF No. 1 at 25.) But this mere recitation of the legal standard—without any supporting factual allegations—falls short of stating a plausible municipal liability claim. He makes passing references to other cases and to a lack of staffing, but none of that is enough. He has not tied the lack of staffing to his injuries, and he cannot import claims from another case. I will dismiss all claims against the City of

Philadelphia, Corizon, and YesCare as a result. If Mr. McClain has additional facts he can plead to make these claims plausible, then he may include them in an amended complaint.

### 2.    Claims against individual Defendants

In a Section 1983 action, a plaintiff must allege how each defendant was personally involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). "Suits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quotation omitted). "Second, 'a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct." *Id.* (same).

### a.    Undeveloped claims

Many of the claims in the Complaint must be dismissed because they are vague, conclusory, and undeveloped. The Complaint fails to explain how the following Defendants were involved in an alleged violation of Mr. McClain's constitutional rights:

Angelucci; Xavier Beaufort; Gray; Rose; Harmon; Lateefah Robinson; Simmons; Orges Prifti;

Dwayne Corley; Kirkwood Hansfield; Mark Randell; Hughes; Tun; Baldwin; Earley; Williams;

T. King; McDanials; Bruce Herdman; Regional Medical Director; Regional Behavioral Health

Director; Gregory Vrato; James Kenney; Christy Brady; Williams; Shannon Scott; Gills;

Tamara Brittingham; Cheryl Bettigole; William Hilty; and Antoni. In addition, Mr. McClain

does not tie many of his allegations to any particular Defendant or Defendants. For

example, he alleges in a general way that someone is interfering with his mail, but he does

not indicate who. Nor does he develop these allegations in a manner that states a

plausible constitutional violation. Similarly, Mr. McClain's allegations that he is "being

punished [in solitary confinement] with only 2-3 hours out-of-cell time, or less, a week"

and that he has inadequate access to "legal services, counsel and attorney calls and

courts" are vague, undeveloped, and insufficiently tied to any of the named Defendants.

(ECF No. 1 at 21, 22.)

Likewise, his allegations that Defendant Hillary relayed a message to Mr. McClain

from his attorney without letting Mr. McClain speak with the attorney and that Defendant

Hillary denied Mr. McClain's request for copies of his case dockets does not plausibly

allege that Defendant Hillary unreasonably burdened Mr. McClain's access to counsel or

otherwise prevented him from accessing the courts. As a result, I will dismiss these

undeveloped claims, and Mr. McClain may amend his Complaint if he can assert facts to

make these claims plausible and show that they pose an immediate risk of harm.

### b.    Claims for deliberate indifference to medical and mental health needs

Mr. McClain asserts claims for deliberate indifference to his medical needs and mental health needs, including his suicidal tendencies. To state a constitutional claim in this context, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[5] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "A medical need is serious ... if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quotes omitted). A plaintiff alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).  It is difficult to establish deliberate indifference in a case where a prisoner has received some amount of medical treatment because "prison

---

[5]    I can evaluate the sufficiency of Mr. McClain's claim(s) by applying the Eighth Amendment standard even if he is a pretrial detainee subject to the 14th Amendment. *See Thomas v. City of Harrisburg*, 88 F.4th 275, 281 n.23 (3d Cir. 2023).

authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993).

Mr. McClain indicates that he has urological and mental health conditions and a history of suicidal tendencies. Assuming these conditions constitute serious medical needs, Mr. McClain has not adequately alleged that any of the named Defendants exhibited deliberate indifference to them. At most, he contends that he has been on a waitlist to see a urology specialist since June 17, 2023, but he does not tie the alleged delay in treatment to any Defendant in a way that could support a deliberate indifference claim. The Complaint does not make clear which, if any, of the numerous Defendants was aware of Mr. McClain's urological condition, was responsible for his care, or was aware of a need for more urgent treatment.

Mr. McClain claims that he feels suicidal, has been saving "his psych pills" to commit suicide, and is not receiving "suicidality psychotherapy treatment." (ECF No. 1 at 23.) But again, he fails to connect this allegation with any Defendant in a meaningful manner. He claims to have "told A-1-3 officers and nurses" about his suicidal tendencies and his hoarding of "psych pills" to "try to kill himself," but he does not identify the person or people with whom he spoke or the details of those conversations. (*Id.*) In addition, his own allegation that he is receiving "psych pills" undermines his allegation that Defendants are deliberately indifferent to this condition. His passing reference that he spoke with Defendants Jones, Dr. C.J., Hurt, Abella, Abby, Brittany, Carol, Dr. Pancholy, Dr. Bradley,

and Jackie about these issues and received no medical treatment (or inadequate treatment) is too vague to support a deliberate indifference claim against them. *See, e.g.*, *Burk v. Crowe*, No. 19-cv-5792, 2020 WL 42758, at *4 (E.D. Pa. Jan. 3, 2020) ("[Plaintiff's] general allegation that he 'wrote to' [certain individual defendants] … is too vague and undeveloped to state a plausible basis for liability against [them.");

While Mr. McClain includes more specific allegations related to Defendant Jumi Park, those allegations fall short of stating a plausible claim. He contends that when he arrived at CFCF, Ms. Park informed him that he "would not be provided to continue to receive his Latuda or Doxepin psych medications that were sent with him from the Pa DOC." (ECF No. 1 at 16.) At the same time, however, Mr. McClain pleads that his is receiving some unidentified "psych pills." (*Id.* at 23.) These allegations do not make clear whether Ms. Park changed his medication, reduced his medication, or denied him medication altogether. Nor are there any additional allegations against Ms. Park that clarify the situation or otherwise support an inference of deliberate indifference. I will dismiss all of these claims. Mr. McClain can amend his Complaint with additional facts if he has them and if they demonstrate an immediate risk of harm.

### c.    Claims based on transfer to Unit A-1-3

Convicted and sentenced prisoners have no inherent constitutional right to any particular security classification or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005). Rather, in the prison context, "[d]ue process

protection for a state created liberty interest is . . . limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quotation omitted). "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quotation omitted). In deciding whether conditions are atypical and significant for purposes of establishing a liberty interest, a court must consider "(1) the duration of the challenged conditions; and (2) whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life." *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549, 560 (3d Cir. 2017).  In determining whether a hardship is atypical or significant, the relevant comparator is the general population. *Id.* at 564.

The standard is different with respect to pretrial detainees. "Detainees have a liberty interest in not being subjected to punishment for the crime with which they have been charged until after they have been convicted and sentenced, but the governmental interest in maintaining prison security for the duration of their detention is substantial." *Stevenson v. Carroll*, 495 F.3d 62, 70 (3d Cir. 2007).  "Prison officials must provide detainees who are transferred into more restrictive housing for administrative purposes only an explanation of the reason for their transfer [within a reasonable time after the transfer] as

well as an opportunity to respond." *Id.* However, "greater process [is] accorded to prisoners who are confined for disciplinary infractions than those moved for purely administrative reasons." *Id.* A pretrial detainee cannot be subjected to disciplinary segregation for violating prison rules without providing certain due process protections including the right to receive "written notice of the charges ... no less than 24 hours" before a hearing, and "a 'written statement ... as to the evidence relied on and reasons' for the disciplinary action." *Wolff v. McDonnell*, 418 U.S. 539, 564 (1974).

It is unclear whether Mr. McClain is a pretrial detainee or a convicted and sentenced inmate "under a county probation sentence." (ECF No. 1 at 5.) The Complaint's imprecision on this detail makes it difficult to determine the standard that governs Mr. McClain's claim and, accordingly, whether any such claim is plausible. *See generally Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) (court must "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name"). I will therefore dismiss this claim due to the lack of clarity and permit Mr. McClain to replead it, so that I may apply the appropriate standard.

### d.    Claims against judges

The 11th amendment bars Mr. McClain's claims against Judge Simmons and Judge McClain in their official capacities because such claims are really against the Commonwealth of Pennsylvania, which has not waived its sovereign immunity. In addition, the judges are immune from suit in their individual capacities for acts they took

in their capacity as judges. *See Bradley v. Fisher*, 80 U.S. 335, 351 (1871). There is a two-part test to determine if judicial immunity applies. First, whether the action was taken in "the judge's judicial capacity." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citations omitted). Second, whether the action was taken in a "complete absence of all jurisdiction." *Id.* at 12 (citation omitted). Even if Judge Simmons issued an order putting Mr. McClain in solitary confinement, she did so in her judicial capacity, immunizing her from suit. The same is true with respect to Judge Gibbs's order for Mr. McClain "to be at the state hospital." (ECF No. 1 at 21.) Thus, to the extent Mr. McClain intended to bring a claim against either Judge based on these orders, judicial immunity bars those claims, and I will dismiss them with prejudice.

### e.   Claims related to the "hit"

Unlike his other assertions, Mr. McClain's allegation that Defendants Carter and Hawkins were among the officers who "put the $100 bag of commissary hit contract 'on [his] head'" has enough specificity to state a claim against these two Defendants for deliberate indifference. (ECF No. 1 at 25.) Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quotation omitted). To state a plausible failure to protect claim, Mr. McClain must allege that: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) prison officials acted with deliberate indifference to that substantial risk of serious harm; and (3) the officials' deliberate indifference caused harm. *See id.*

"'Deliberate indifference' is a subjective standard...—the prison official—defendant must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

If, as Mr. McClain alleges, Defendants Carter and Hawkins offered other inmates $100 in commissary to stab Mr. McClain, that conduct would amount to deliberate indifference to his safety. Anyone who encourages other inmates to harm a prisoner without some penological purpose causes risk to the prisoner's safety and does so knowingly. *See, e.g.*, *Smolen v. Brown*, No. 18-cv-7621, 2023 WL 6199094, at *9 (S.D.N.Y. Sept. 22, 2023).

To the extent that Mr. McClain contends that the reason that officers tried to put a hit on him was "due to [his] grievances and lawsuits filings and litigation against PDP correctional officials and CFCF staff" (ECF No. 1 at 25), that might also be a first amendment retaliation claim. To state such a claim, a prisoner must allege:  (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). A prisoner's filing of a grievance or lawsuit constitutes constitutionally protected conduct. *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). The timing of the allegedly retaliatory behavior relative

to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *See id.*

Mr. McClain's allegations on this point are too general to state a plausible First Amendment retaliation claim. He does not identify which grievances or lawsuits motivated the retaliation. Nor does he allege any facts from which one could infer that Defendants Carter and Hawkins were aware of the lawsuits or grievances or that the grievances or litigation motivated them to put a hit on Mr. McClain. Thus, I will not let Mr. McClain proceed with this claim as pled. He can amend his Complaint if he has facts to support an amendment and if he can show that it poses a threat of immediate harm.

## IV.    CONCLUSION

Mr. McClain's scattershot Complaint has alleged sufficient information to proceed on one claim against two of the named Defendants. I will dismiss the rest of his claims. I will dismiss the claims against Judges Simmons and Gibbs with prejudice. For the rest, I will dismiss the claims without prejudice. I will grant Mr. McClain an opportunity to file an amended complaint reasserting his claims so that he may provide more clarity and specificity, if possible. In the alternative, Mr. McClain may advise me that he seeks to proceed only on the claim that passed statutory screening: his deliberate indifference claim against Defendants Carter and Hawkins. In the event Mr. McClain returns with an amended complaint, I will screen the amended complaint pursuant to 28 U.S.C. § 1915(e),

as I have done with Mr. McClain's initial Complaint, and will determine whether further severance of his claims is appropriate. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

January 10, 2024